Jasen, J.
On October 7, 1971, Seymour Sher was indicted by the Grand Jury of Albany County for the felony of possession of gambling records in the first degree. After trial, the jury convicted the defendant of the charge and the judgment of conviction was affirmed by the Appellate Division. We conclude that the People failed to provide a satisfactory explanation for the absence of seals on tapes of intercepted telephone conversations and would reverse the order of the Appellate Division.
The State Police, acting on the basis of surveillance reports and information derived from court-ordered wiretaps, obtained a search warrant commanding the search of Apartment B, 390 Madison Avenue, Albany, New York, as well as the person of the defendant, Seymour Sher. On August 26, 1971, the police executed the warrant, capturing the defendant and seizing gambling records, adding machines, unused stationery and over $1,300 in United States currency. At the trial, these items were introduced into evidence. A tape recording of an incriminating telephone conversation between the defendant and another person was played to the jury. Tape recordings of other equally incriminating conversations were admitted into evidence. The defendant made timely objections to the introduction of this evidence, on the ground that the People had failed to comply with the sealing requirement of CPL. (CPL 700.50, subd 2; 700.65, subd 3.) A police investigator did state, as an aside in his direct examination, that the tapes had been sealed pursuant to a court order and had been retained by the officer in his own custody. The tapes were unsealed two or three days prior to trial, "for the purposes of this trial.”
CPL 700.35 (subd 3) provides that the contents of any intercepted communication must, if possible, be recorded in such a manner as to protect the contents from editing or other alteration. Immediately upon the expiration of the eavesdropping warrant, the recordings "must be made available to the *603 issuing justice and sealed under his directions.” (CPL 700.50, subd 2.) A person who has, pursuant to CPL provisions, obtained information concerning an intercepted communication "or evidence derived therefrom” may not testify regarding this knowledge unless the seal is still present on the recordings or a satisfactory explanation for its absence is provided. (CPL 700.65, subd 3.)
In People v Nicoletti (34 NY2d 249, 253), we held that the sealing requirement must be strictly construed. The need for rigid adherence to the statutory procedure is explained by the history of our present wiretapping provisions. Until 1968, the Federal Communications Act of 1934 prohibited any person unauthorized by the sender from intercepting and revealing the contents of any communication. (48 US Stat 1103, as amd by US Code, tit 47, § 605.) On June 17, 1968, the Supreme Court held that the Federal statute precluded the States from introducing into evidence at State criminal trials evidence of telephone communications intercepted by State law enforcement officials. (Lee v Florida, 392 US 378.) Earlier, the Supreme Court had set out the constitutional standards regulating the use of electronic eavesdropping equipment, as distinguished from wiretapping devices, by law enforcement officials. (Berger v New York, 388 US 41; Katz v United States, 389 US 347.) Congress, in title III of the Omnibus Crime Control and Safe Streets Act of 1968, signed into law but two days after the Supreme Court’s decision in Lee v Florida (supra), authorized both Federal and State law enforcement officials to conduct wiretaps and other electronic surveillance, provided due compliance was made with statutory procedures designed to comport with the constitutional requirements. (US Code, tit 18, § 2516, subd [2]; Senate Report No. 1097, 1968, US Code & Admin News, pp 2112, 2113.) Among the Congressional requirements was the direction that intercepted wire or oral communications be recorded, if possible. The recording should be done in a manner designed to protect the recording from editing and alteration, and be made available to the Judge that issued the warrant for sealing under his directions. "The presence of the seal * * * or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom.” (US Code, tit 18, § 2518, subd [8], par [a].)
The Federal Communications Act was modified to permit *604 States to intercept wire and telephone communications in accordance with the congressional and constitutional guidelines. (US Code, tit 47, § 605.) Thereafter, our State revised its electronic surveillance statutes to comply with the Federal statutes. (Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL art 700, pp 242-243.) The provisions of CPL article 700 track, as they must, the language of the Federal law. From this review of the legislative history, it is clear that the requirements of article 700, which are reflective of controlling Federal law, must be strictly complied with. In the absence of compliance, the State officials lack authority to wiretap, and any interceptions they make are unlawful, and any evidence derived from the wiretap is inadmissible. (US Code, tit 18, § 2515.)
The People contend, on this appeal, that the absence of the seals is sufficiently explained by the need to use the tapes to prepare for trial. Bearing in mind the purpose and intent of the sealing requirement, we conclude that this excuse is unsatisfactory.
The sealing requirement originated in the 1968 Omnibus Crime Control and Safe Streets Act. Congress endeavored to provide a procedure which would ensure that the identity, physical integrity and contents of wiretap recordings would be protected from editing or alteration. While it may be argued that most law enforcement agencies have facilities for tape storage and security that are superior to the courts’, Congress in enacting the 1968 act made it absolutely clear that the recordings "be considered confidential court records”. (Senate Report No. 1097, 1968, US Code & Admin News, pp 2112, 2193.)
In our view, the failure of the prosecution to obtain judicial approval for the unsealing of the tapes and the absence of judicial supervision over the unsealing process violated the procedure clearly mandated by the Federal and State statutes. As in People v Nicoletti (34 NY2d 249, 253, supra), no claim is made, nor is there any indication, that the tape recordings involved were in any way altered. "It is the potential for such abuse to which we address ourselves” (p 253). Sealing reduces the risk that skillful editors might make alterations that are undetectable without the use of technical experts and sophisticated, expensive electronic equipment. Moreover, the requirement also assists in establishing a chain of custody and serves to protect the confidentiality of the tapes.
*605 We do not doubt that the prosecution had a valid purpose in opening up the tapes in order to use them for trial preparation. However, this purpose does not authorize the police or the District Attorney, on their own, to unseal recordings that should be regarded as confidential court records. Duplicate tapes, as authorized by the court, could have and should have been made and there would have been no need to disturb the sanctity of the originals. (See People v Nicoletti, supra, pp 253-254.) Alternatively, if there was a remaining need to unseal the originals, judicial permission and supervision should have been obtained prior to the unsealing.
The sealing requirement was designed to prevent the abuse of wiretap recordings. To that end, as we held in Nicoletti, the requirement must be strictly construed. The burden is on the prosecution to establish due compliance with the statutory procedures. We adhere to the rule announced in Nicoletti.
Although only one tape was actually played to the jury, other tapes, as well as physical evidence derived from the wiretaps, were admitted into evidence. The failure to comply with the sealing requirement rendered all of these items inadmissible. (CPL 700.65, subd 3.) We are compelled to conclude that there is a significant probability that the jury’s verdict would have been different had this evidence been excluded from the jury’s consideration. (People v Crimmins, 36 NY2d 230, 242.) We would, therefore, reverse the order of the Appellate Division. It is still open to the People to prove their case without the benefit of the wiretap recordings or the evidence derived therefrom. Therefore, we do not direct dismissal of the indictment, but, instead, we would direct that a new trial be had. Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler and Fuchsberg concur; Judge Cooke taking no part.
Order reversed, etc.