THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JACQUE-
LINE IUCCI, VICTOR IUCCI and JAMES GERITANO, Respon-
dents.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JAMES
GERITANO, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v VICTOR
IUCCI and JACQUELINE IUCCI, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v STEVEN
BORIELLO, Respondent.

Second Department, January 16, 1978

1

4

APPEARANCES OF COUNSEL

*Eugene Gold, District Attorney (Laura A. Brevetti* of counsel), for appellant.

*Jay Gregory Horlick* for respondents.

### OPINION OF THE COURT

HOPKINS, J. P.

By Indictment No. 4648/1974, the defendants Jacqueline Iucci, Victor Iucci and James Geritano[1] were charged with the crimes of eavesdropping (11 counts) and possession of eavesdropping devices (see Penal Law, §§ 250.05, 250.10). By Indictment No. 4794/1974, the defendant James Geritano was charged with the crime of unlawfully obtaining communications information (see Penal Law, § 250.30). By information, the defendants Victor Iucci and Jacqueline Iucci were charged with the crime of possessing a rifle or shotgun without a certificate of registration (see Administrative Code of City of New York, § 436-6.9).

The defendants moved to suppress the evidence obtained under a search warrant issued on September 9, 1974. After hearings were held pursuant to the motion, Criminal Term granted the motion and suppressed the evidence, holding that

---

1. Paul Moss was also indicted, but pleaded guilty to the crime of eavesdropping.

the search warrant, executed subsequent to the issuance of an eavesdropping warrant, but based in fact on information secured under the eavesdropping warrant, was tainted by a delay in sealing the tapes resulting from the eavesdropping for a period of 29 days after the expiration of the eavesdropping warrant. The People appeal from so much of the order as suppressed the use as evidence of the eavesdropping devices and a rifle found in the Iucci apartment following a search under the search warrant.

■ We reverse. Sufficient grounds for the search warrant existed independent of the tapes and the failure to seal the tapes for 29 days after the expiration of the eavesdropping warrant did not invalidate the search warrant and the evidence seized thereby.

## I

On August 15, 1974 a wiretap was authorized by an order of the Supreme Court on a telephone listed in the name of Irving Moss and located in an apartment at 25 Plaza Street, Brooklyn, New York. The order permitting the tap was based on affidavits of the District Attorney and of law enforcement officers alleging that the defendant Geritano was engaged in illegal bookmaking activities, using the described telephone for the taking of bets. The allegations were supported by adequate factual statements relating to the gambling in which Geritano was supposedly involved and the circumstances in which the telephone figured. The order limited the time of operation of the tap from August 19, 1974 until September 17, 1974.

During this period—on August 28, 1974—two conversations were heard between Geritano and Paul Moss, an employee of the New York Telephone Company, concerning the installation of a wiretap by them on a telephone in the name of Ann Basciano located at 210 President Street, Brooklyn, New York. The wiretap was designed to be operated from premises at 424 Clinton Street, Brooklyn.

Thereafter members of the District Attorney's office informed employees of the telephone company that an unlawful wiretap might be in operation on the Basciano telephone. An agent of the telephone company and a detective of the police department both ascertained that an unauthorized wire had been attached to the Basciano telephone through equipment owned by the telephone company and that the wire ran to the

Clinton Street address and an apartment occupied by the defendant Victor Iucci.

On September 9, 1974 a warrant to search the Iucci apartment was issued by the Supreme Court predicated on an affidavit of the detective who had observed the installation of the illegal wiretap on the Basciano telephone. Nothing was stated in the affidavit concerning the conversations intercepted under the Moss wiretap. The search warrant was then executed and the line linked to the Basciano telephone was found connected to a radio receiver in the apartment; a rifle visible under a couch was also found. These articles, together with other electronic equipment in the apartment, were seized under the warrant.

On October 16, 1974, upon application by the District Attorney, 28 reels containing the recordings of the conversations heard over the Moss telephone were ordered to be sealed by the Supreme Court.

## II

The indictments against the defendants Iucci and the defendant Geritano were filed on September 23, 1974; the information against the defendants Iucci was filed on November 14, 1974 in the Criminal Court of the City of New York, Kings County. The defendants moved to suppress the evidence obtained under the search warrant in the Supreme Court, Kings County, with respect to the indictments and the information. At the suppression hearing, it was stipulated that the decision of the Criminal Term should include both the indictments and the information, even though the latter was pending in the Criminal Court.[2]

The defendants contended on the motion that the People had not minimized interceptions of the telephone calls, thereby breaching the enabling statute (CPL 700.30); that the People had failed to give the notice required by the statute (CPL 700.50); that the People had violated the statute by intercepting communications not otherwise sought in the eavesdropping warrant which constituted evidence of other crimes and had not sought to have the eavesdropping warrant amended as soon as practicable (CPL 700.65); that there was insufficient cause for the issuance of the search warrant; and,

---

2. It was stipulated that an information in the Criminal Court against Steven Boriello involving the same crime would also be affected by the decision.

finally, that the People had not complied with the statute by promptly sealing the recordings of the communications (CPL 700.50, subd 2).

Criminal Term found that the eavesdropping warrant had been amended on September 20, 1974 to include the crimes of eavesdropping and conspiracy to commit eavesdropping. Without explicitly passing on the other contentions, Criminal Term held that the unexplained delay by the People in failing to procure an order sealing the tapes until 29 days after the expiration of the eavesdropping warrant amounted, in effect, to "no sealing at all" and, hence, that all communications and evidence derived from the wiretap must be suppressed. Moreover, Criminal Term held that as the search warrant was based partially on the suppressed communications, and other independent information sufficient to represent probable cause did not exist, the evidence seized under the search warrant must likewise be suppressed as fruits of the tainted source.

The People argue for reversal principally on the grounds that certain of the defendants lack standing to contest the eavesdropping order, or any contaminated interception made under it, and that the search warrant was supported by untainted probable cause, apart from any violation of law arising from an untimely application to seal the tapes.

## III

A preliminary question is raised by the People relating to the propriety of the determination of the Criminal Term in taking jurisdiction of the information filed in the Criminal Court. CPL 710.50 provides that a motion to suppress evidence connected with an information should be made in the court in which the information is pending. Though the People acknowledge that the parties consented by stipulation entered into in open court that Criminal Term should decide the motion applicable to both the indictments and the information, nevertheless it is urged that the stipulation could not confer jurisdiction on the Supreme Court over the information.

Stipulations between the prosecutor and the defendant in criminal actions must always bear greater scrutiny than stipulations made in civil actions. There is always present the public interest inherent in the enforcement of criminal law; there is also the paramount necessity to insure that neither the State nor the individual should be disadvantaged by a

stipulation made without full understanding of the relevant facts or law (cf. *People v D'Angelo*, 56 AD2d 854; *People v Fwilo*, 47 AD2d 727; *People v Gingello*, 84 Misc 2d 63, 65; *People v Cefaro*, 45 Misc 2d 990, 991-992, affd 28 AD2d 694, affd 21 NY2d 252, revd on other grounds upon rearg 23 NY2d 283). Moreover, the performance of the stipulation in the criminal case must be in any case subject to the approval of the court (cf. *State v Sanchell*, 192 Neb 390, cert den 420 US 908; Ann., 36 ALR3d 1280). Still, where a stipulation has been entered into by the parties with full understanding, and it is not against the public interest and violates no mandatory statutory or constitutional provision, it should not be ignored *(People v Prado*, 81 Misc 2d 710).

At the time the stipulation in this record was made, it was patently understood by the parties that the indictments and the information merely reflected aspects of the same underlying transaction. The defendants were accused of having engaged in illegal wiretapping; the article seized by the search authorized by the warrant were discovered because of the surveillance activities of the defendants. In short, the questions of fact and law to be determined on a suppression hearing were the same, no matter whether the hearing was to be held before the Supreme Court or the Criminal Court.

The stipulation was irregular, in that it attempted in effect to consolidate the criminal actions pending in the Supreme Court with the action pending in the Criminal Court. The Supreme Court would have had "preliminary jurisdiction" (see CPL 1.20, subd 25) and "trial jurisdiction" of the offenses (see CPL 1.20, subd 24; 10.20, subd 1, par [b]), as those terms are defined by the statute. Obvious benefits to both the judicial process and the parties resulted from the conduct and determination of one, instead of two, suppression hearings. In the practice commentary to CPL 710.50, it is remarked by Judge DENZER that "[t]he thrust of subdivision 1 is to require the motion to be made in a superior court whenever there is any logical basis therefor" and that only in a "case [where] there is no indication that the action or offense will ever be handled by a superior court" is the motion to be made in the local criminal court (Denzer, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 710.50, p 290).

■ Under the circumstances, accordingly, though the stipulation incorporates an irregular practice, we do not conceive the stipulation to be jurisdictionally unfounded. We take the

District Attorney at his word, expressed in the stipulation, and consider the determination of Criminal Term to be reviewable here on both the indictments and the information.

## IV

The People's contention on the issue of standing may be simply put: only Geritano can challenge the use of the information obtained under the eavesdropping warrant, since he alone was named in the warrant (see CPL 710.10) and, therefore, the other defendants have no standing to question the legality of the wiretap.

■■ The Criminal Term did not address this issue because, as the People frankly admit, it was not raised before the Criminal Term by the People and only now is raised before us. We are not disposed at this point in the case to consider the contention. "It is quite true that an appellate court should not, and will not, consider different theories or new questions, if proof might have been offered to refute or overcome them had they been presented at the trial" (Rentways, Inc. v O'Neill Milk & Cream Co., 308 NY 342, 349). Under our power to reverse in the interest of justice (CPL 470.15), we are not compelled to disregard the claim, but neither are we compelled to take cognizance of it. Where, as here, the defendants were not placed on notice that the People were resisting the applications on the ground of lack of standing, and the defendants might have introduced proof to establish their right to make the applications, we do not believe that we should, in the interest of justice, entertain the question now.

## V

■ The determination of the Criminal Term suppressed the tapes because of the 29-day delay in sealing them, and then directed the suppression of evidence derived under the search warrant as fruits of the illegality, citing Nardone v United States (308 US 338, 341). We concur in the determination that the delay of 29 days in sealing the tapes violated the statutory command that the recordings be "immediately" sealed (see CPL 700.50, subd 2; People v Sher, 38 NY2d 600, 604; People v Nicoletti, 34 NY2d 249, 253).

■ That does not, however, end the matter. The question remains whether that violation of the statute so contaminated the search warrant that it and the evidence thus uncovered

must fall—or to refine it as stated in *Wong Sun v United States* (371 US 471, 488): " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." In meeting that test, we must deal with the considerations of general policy represented by the exclusionary rule, together with the exceptions to the rule which permit the admission of the evidence, if produced from an independent source *(Silverthorne Lbr. Co. v United States,* 251 US 385), or where the taint is so attenuated as to be immaterial *(Nardone v Untied States,* 308 US 338, *supra),* or where its discovery would have been inevitable *(People v Fitzpatrick,* 32 NY2d 499, cert den 414 US 1033). Once the initial illegality has been established, then the accused must be afforded the opportunity to show that a substantial portion of the case against him was poisoned by the taint, and the prosecution the opportunity to show that the proof had an independent origin *(Nardone v United States, supra,* p 341).

◼ In the light of these factors, we differ from Criminal Term in the conclusion reached that the search warrant and the evidence derived therefrom are fatally infected by the failure of the People to secure the sealing of the tapes. We observe that at the time the conversations between Geritano and Moss were intercepted, a valid wiretapping order was in existence. Though the overheard conversations did not directly involve the subject matter of the order, the use of the information obtained was authorized as "unanticipated and undescribed communications" alluded to in *United States v Cox* (449 F2d 679, 687, cert den 406 US 934), quoted in the opinion of Judge GABRIELLI in *People v Di Stefano* (38 NY2d 640, 647). We further observe that the wiretapping order was later amended to include as subject matter the crimes alleged in the indictments under review.

◼ ◼ We agree that the failure to seal the recordings promptly offended the statutory requirement of immediacy and thus rendered inadmissible the evidence of the tapes against the defendants at a trial. The force and intent of the requirement are vindicated by the enforcement of such a sanction against the prosecution. But the policy of rigorous attention to the need of immediate sealing to prevent the alteration of the tapes and the possibility that confidentiality

might be breached (see *People v Sher,* 38 NY2d 600, 604, *supra)* would not be promoted by excluding the use of the overheard communications as probable cause to launch an investigation of the telephone lines to ascertain whether, indeed, an unauthorized wiretap had been installed by the defendants. Significantly, the wiretap was in plain sight on the property of the telephone company and could have been discovered without difficulty upon examination. Once discovered, the existence of the installation was ample reason to justify the issuance of the search warrant for the apartment. In addition, the search warrant, when presented for signature to the court, was supported by affidavits showing the discovery of the unauthorized wiretap, without mention of the overheard conversations between Garitano and Moss. That does not mean that the search warrant was insulated from attack if in fact an overriding taint was contracted from illegal police conduct; the nature and extent of the police conduct are simply elements to be considered in the total factual context in determining whether taint was so attenuated as to be inconsequential.

In *United States v Fury* (554 F2d 522, 531-532), where the issue concerning the failure to seal wiretap recordings promptly, under facts somewhat similar to the circumstances here, was confronted by the Second Circuit, the court held that tapes of recordings not timely sealed might still serve as probable cause for another wiretap order. Judge GURFEIN, in his opinion, referred to the right of law enforcement officers to use knowledge obtained by intercepted communications in the discharge of their duties (see CPL 700.65, subds 1, 2, 3), and noted the argument of the prosecution, with seeming approval, that a police officer who was operating an authorized wiretap would be prevented from using the knowledge thus obtained only because the tapes had not yet been sealed *(United States v Fury, supra,* pp 531-532).[3] In the present record it appears that the search warrant was issued days before the wiretap warrant expired and any necessity for sealing had arisen.

We see, in summary, no ruinous gap driven into the consti-

---

3. We are not unmindful that *Fury* was not followed in a different aspect of its holding—whether sealing should be accomplished at the end of the termination of the original order or, instead, at the end of any extension (see *People v Glasser,* 58 AD2d 448, 452, n 1; cf. *People v Pecoraro,* 58 AD2d 462); but of course, that disagreement does not affect the issue here.

tutional policy underlying the poisonous tree doctrine by holding that the search warrant and the evidence thereunder were not contaminated by the failure to seal the tapes; nor do we see any reason to hold that the violation of the statute requiring immediate sealing must be so strictly construed as to invalidate all that preceded it. A contrary conclusion would create the anomaly that the validity of a search warrant would depend on acts or omissions to act by law enforcement agents taking place in the future—a shifting and uncertain foundation for the administration of criminal justice.

## VI

Though the Criminal Term under the circumstances was not obliged to consider the other contentions of the defendants, once the determination to suppress was made on the ground of the lack of sealing, we have reviewed them and the present contentions of the defendants and find them meritless.

The order accordingly should be reversed and the defendants' motions denied.

LATHAM, DAMIANI and COHALAN JJ., concur.

Order of the Supreme Court, Kings County, entered November 19, 1976, reversed insofar as appealed from, on the law and the facts, and motion to controvert a search warrant and suppress the evidence seized thereunder denied.