■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HARRY WEISS and DONALD TREVORAH, Appellants.—Appeal by (1) defendant Weiss from a judgment of the Supreme Court, Westchester County, rendered October 25, 1976, convicting him of promoting gambling in the first degree, upon his plea of guilty, and imposing sentence, and (2) defendant Trevorah from a judgment of the same court, rendered November 4, 1976, convicting him of possession of gambling records in the first degree and promoting gambling in the first degree, upon a jury verdict, and imposing sentence. Judgments reversed, on the law, the tapes made pursuant to the original wiretap order and the extension order are suppressed, and the case is remitted to the Criminal Term for further proceedings consistent herewith. On January 28, 1975 an eavesdropping warrant was issued authorizing a 30-day tap on a telephone listed to Frank Talia. The warrant specified conversations between Talia and other unnamed coconspirators concerning possession of gambling records and the promotion of illegal gambling. On February 27, 1975 the eavesdropping warrant was extended for 30 days, to March 28, 1975. In the course of monitoring Talia's telephone, the police overheard certain calls made to a telephone listed to defendant Trevorah. By March 12, 1975, well before the extension order ended, the police had gained sufficient information from the Talia tap to obtain a warrant to search Trevorah's apartment. On March 14, 1975 the police executed the warrant by entering Trevorah's apartment and seizing certain gambling paraphernalia. Weiss and Trevorah were both present in the apartment and were arrested. Initially it should be noted that the defendants' motion for a minimization hearing was properly denied. The Fourth Amendment right against unreasonable searches and seizures has been held to be a personal right *(Alderman v United States,* 394 US 165). A defendant must therefore show that his own right to privacy has been violated *(United States v Ricco,*

421 F Supp 401). In the case at bar, neither of the defendants had any property interest in the tapped premises. Trevorah was not a party to any of the taped conversations and Weiss, although a party to six of the taped conversations, has made no specific allegation of lack of minimization as to those conversations. Therefore, neither of the defendants had a valid, cognizable claim. The defendants do have standing to object to the failure of the police to seal the tape recordings immediately upon the termination of the tap as required by CPL 700.50 (subd 2). This is because the sealing requirement is not based on the Fourth Amendment right to privacy. Rather, the sealing requirement is designed to preserve the integrity of the tapes by limiting the opportunity for tampering with them (*United States v Ricco, supra*). Accordingly, an objection pursuant to CPL 700.50 (subd 2) may be made by any person against whom the tapes or their fruit will be offered. The facts with respect to the sealing of the tapes are not in dispute. The initial wiretap order ran until February 27, 1975. However, on that day the police obtained an extension order authorizing the continuation of the tap until March 28, 1975. The tap was in fact terminated on Thursday, March 27, 1975. The next day was Good Friday and the Easter weekend followed. The tapes were actually turned over for sealing the following Friday, April 4, 1975. The supervising Assistant District Attorney offered no specific excuse for his failure to turn over the tapes earlier. CPL 700.50 (subd 2) provides: "Immediately upon the expiration of the period of an eavesdropping warrant, the recordings of communications made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions." This court has held that the obligation to seal tapes arises at the expiration of the 30-day period of the warrant, and at the close of each extension thereafter granted (*People v Glasser,* 58 AD2d 448; cf. *People v Pecoraro,* 58 AD2d 462). The tapes made pursuant to the initial warrant should have been sealed immediately after the warrant terminated on February 27, 1975. Thus, there was a 36-day delay between the termination of the initial warrant and the sealing of the tapes made under it. That delay was inexcusable and requires that the tapes be suppressed (see *People v Iucci,* 61 AD2d 1). As for the tapes made under the extension order, the delay of eight days renders them similarly inadmissible. While there may be circumstances in which an eight-day delay would be justified, the District Attorney in this case has given no explanation to excuse the delay. Consequently, all of the tapes made under the initial wiretap order and the extension order must be suppressed. A final question remains to be resolved. When the police entered Donald Trevorah's apartment on March 14, 1975, they seized certain gambling paraphernalia which was later to be used against the defendants. The gambling paraphernalia was seized pursuant to a search warrant which was based upon information obtained from the wiretap. The question is whether the failure to seal the tapes requires that the evidence seized under the March 12, 1975 search warrant be suppressed as " 'fruit of the poisonous tree' " (see *Wong Sun v United States,* 371 US 471, 488). In *People v Iucci (supra),* a wiretap was authorized to run from August 19, 1974 until September 17, 1974. In the course of the tap the police overheard certain conversations which, together with other information, enabled them to obtain a warrant on September 9, 1974, to search defendant's apartment. There the police seized evidence which they intended to use against defendant *Iucci.* Several days after the search, the wiretap terminated, but the tapes were not sealed until 29 days after the termination of the tap. This court held that although the tapes must be suppressed, the evidence seized under the search warrant could be

admitted in evidence, since the search warrant was obtained before any obligation to seal the tapes arose. Under the circumstances, the evidence seized could not have been tainted by the failure to seal the tapes in accordance with CPL 700.50 (subd 2). In the case at bar, the search warrant was obtained on March 12, 1975. The police were required to seal the tapes made under the first wiretap order immediately upon its termination, February 27, 1975. However, the tapes made thereafter were made under the authorization of the extension order and were not required to be sealed until March 28, 1975. Therefore, whether the evidence seized under the search warrant should be suppressed depends upon whether the search warrant was based upon information from tapes made under the first wiretap order, or from tapes made under the extension order. As to that question there is insufficient evidence in the record to make a determination. Therefore, upon the remand from this court, Criminal Term should conduct a hearing to determine whether the search warrant issued on March 12, 1975 was based upon information obtained under the initial wiretap order or under the extension order. Latham, J. P., Cohalan, Margett and O'Connor, JJ., concur.