THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v NICK ZENDANO, EDWARD MIRENDA, EDWARD DOMINO, Respondents. (And Eleven Other Actions.)

Fourth Department, May 26, 1978

APPEARANCES OF COUNSEL

*Edward C. Cosgrove, District Attorney (Judith B. Manzella* of counsel), for appellant.

*John P. Pieri* for respondents.

## OPINION OF THE COURT

MOULE, J. P.

The principal question presented on this appeal is whether the State's failure to identify the executing law enforcement authority in its eavesdropping warrant invalidates such warrant and requires the suppression of any evidence obtained pursuant thereto. Under the circumstances of this case, we find it does not.

Defendants were indicted under a series of 12 indictments returned on January 7, 1977, February 7, 1977 and March 29, 1977 which indictments contained counts of promoting gambling in the first and second degree, possession of gambling records in the first degree and tampering with physical evidence.[1]

Upon arraignment, defendants entered pleas of not guilty to all charges. On March 30, 1977 defendants filed a notice of motion to suppress evidence obtained by virtue of an eavesdropping warrant issued on November 10, 1976. Defendants also moved to suppress certain items of physical evidence seized during the execution of a search warrant issued on December 3, 1976. In their affidavit in support of the motion, defendants claimed that the eavesdropping warrant was defective on its face because it did not comply with CPL 700.30 (subd 5), which mandates that an eavesdropping warrant contain "[t]he identity of the law enforcement agency authorized to intercept the communications". Defendants further contended that the affidavits made by the various affiants in support of the application for the eavesdropping warrant were legally insufficient to support the issuance of the warrant. Defendants sought to suppress the fruits, direct or indirect, of the eavesdropping warrant.

In a memorandum decision dated May 3, 1977 the court ruled that the evidence obtained by means of the November

---

1. The 12 indictments contain various combinations of counts against various combinations of defendants. There are eight defendants involved and each faces one or several of the counts enumerated in the indictment.

10, 1976 eavesdropping warrant be suppressed since the warrant failed strictly to comply with CPL 700.30 (subd 5), by not identifying the executing law enforcement authority. The court noted that the provisions of CPL article 700, added in 1970, track the language of the Federal law (US Code, tit 18, §§ 2510-2520, part of which is commonly called the Omnibus Crime Control and Safe Streets Act) and reasoned that the State law must be strictly followed. The court stated that in the absence of compliance, "State officials lack authority to wiretap, and any interceptions they make are unlawful, and any evidence derived from the wiretap is inadmissible." In a memorandum dated May 5, 1977 the court ruled that physical evidence seized pursuant to a search warrant issued in reliance upon information obtained under the November 10, 1976 eavesdropping warrant should also be suppressed.

On May 20, 1977 the State moved for reargument of the suppression motion. On June 2, 1977, following reargument, the court issued an order granting the suppression motion. It is from this order that the State appeals.

The State admits that through inadvertence, the November 10, 1976 eavesdropping warrant did not contain the identity of the law enforcement agency authorized to execute it as required by CPL 700.30 (subd 5), but contends that the omission was not fatal to the warrant since the omitted material does not play a "substantive role" in the general protective scheme governing the issuance of wiretapping warrants.[2]

---

2. The complete text of CPL 700.30 reads as follows:

"§ 700.30 Eavesdropping warrants; form and content

An eavesdropping warrant must contain:

1. The name of the applicant, date of issuance, and the subscription and title of the issuing justice; and

2. The identity of the person, if known, whose communications are to be intercepted; and

3. The nature and location of the communications facilities as to which, or the place where, authority to intercept is granted; and

4. A particular description of the type of communications sought to be intercepted, and a statement of the particular designated offense to which it relates; and

5. The identity of the law enforcement agency authorized to intercept the communications; and

6. The period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained; and

7. A provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to eavesdropping under this article, and must

In interpreting CPL article 700, New York courts look to Federal law since article 700 substantially tracks the language of the Federal Omnibus Crime Control and Safe Streets Act of 1968[3] (see *People v Sher,* 38 NY2d 600). In general, both Federal and State courts have held that since wiretapping is such an extraordinary measure, the language of the authorizing statutes should be strictly followed *(People v Sher, supra; United States v Cafero,* 473 F2d 489, cert den 417 US 918). However, the Supreme Court has indicated that for some statutory provisions substantial, rather than literal, compliance suffices. In the leading case of *United States v Giordano* (416 US 505), the Supreme Court considered the requirement of the Federal statute that an intercept order be approved by the Attorney General or an Assistant Attorney General specially designated by the Attorney General (US Code, tit 18, § 2516, subd [1]), and ordered suppression in a case where the warrant application was authorized by an executive assistant of the Attorney General. The court said that suppression was required "where there is failure to satisfy any of *those statutory requirements that directly and substantially implement* the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device" (416 US, at p 527; emphasis added).

Commenting on *Giordano* and its companion case, *United States v Chavez* (416 US 562), the Supreme Court

terminate upon attainment of the authorized objective, or in any event in thirty days; and

8. An express authorization to make secret entry upon a private place or premises to install an eavesdropping device, if such entry is necessary to execute the warrant." (L 1970, ch 996, § 1, eff Sept. 1, 1971.)

3. Subdivision (4) of section 2518 of title 18 of the United States Code, dealing with the contents of wiretapping orders reads as follows:

"(4) Each order authorizing or approving the interception of any wire or oral communication shall specify—

(a) the identity of the person, if known, whose communications are to be intercepted;

(b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

(c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;

(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and

(e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained."

recently noted that "[t]hose cases hold that '[not] every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications "unlawful" ' " *(United States v Donovan,* 429 US 413, 433). Since *Giordano* and *Chavez,* State and Federal courts have recognized the proposition that substantial, rather than literal, compliance with certain mandated procedures suffices *(United States v Civella,* 533 F2d 1395, cert granted *sub nom. United States v Barletta,* 430 US 902; *United States v Baynes,* 400 F Supp 285, affd 517 F2d 1399). New York cases have followed the same test of determining whether violated procedural mandates are "substantial". In *People v Sher* (38 NY2d 600, *supra),* the Court of Appeals required suppression where the prosecution failed to obtain judicial approval, as required by CPL 700.65, for unsealing of tapes several days prior to trial. It noted that "requirements of article 700, which are reflective of controlling Federal law, must be strictly complied with" (38 NY2d 600, 604). In *People v Losinno* (38 NY2d 316, 318, revg 47 AD2d 534), the Court of Appeals reversed the granting of a suppression order where the warrant directed the District Attorney " 'or any other person or persons expressly designated by you' " to conduct the wiretap. The Appellate Division had ruled that this violated CPL 700.30 (subd 5), since it did not specifically name the agency which would enforce the warrant. In reversing, the Court of Appeals noted that the District Attorney was himself a law enforcement officer.

The recent Second Department case of *People v Fortmuller* (59 AD2d 947, 948) recognized the concept of "substantial compliance" with CPL article 700, and held that "failure to follow to the letter the provision calling for the filing of the order of succession with the county clerk was not a failure to satisfy one of those statutory requirements 'that directly and substantially implement the congressional intention' " (citing *United States v Giordano,* 416 US 505, 527, *supra).*

■ The issue to be resolved here is whether under the facts of this case the failure to identify the law enforcement agency is a violation of a substantive provision of the statute. The warrant is very narrowly drawn and carefully seeks to limit incursions on defendants' rights. The procedures it sets out as to method and scope of the eavesdropping are well within the limits of those mandated by the statute and the Supreme Court. In addition, it is important to note that the warrant

identifies the District Attorney as the person applying for the warrant. This satisfies the crucial consideration of *Giordano* that a politically accountable individual be responsible for the wiretap.

Moreover, the fact that the Buffalo Police Department would execute the warrant was apparent from the application and supporting documents which included an affidavit by two detectives of the Buffalo Police Department which showed that they were conducting the investigation of illegal gambling activities at 801 Richmond Avenue. These officials did, in fact, execute the wiretapping warrant. Additionally, a handwritten draft of the eavesdropping warrant prior to typing shows that in the original draft the Buffalo Police Department was named as the executing law enforcement agency but that such paragraph was inadvertently deleted.

Finally, defendants can point to no prejudice or harm resulting from this purely technical defect in the warrant. There was no delay in executing the warrant and it was executed by the law enforcement agency that was already involved in the investigation and application. Under the facts here, the requirement that the warrant name the law enforcement agency designated to execute it does not "directly and substantially implement the congressional intention to limit the use of intercept procedures", and as the sole defect in the warrant should not invalidate it.

Therefore, the November 10, 1976 eavesdropping warrant should have been upheld. The information intercepted as a result of the eavesdropping warrant was in no way tainted and was properly relied upon for issuance of the December 3, 1976 search warrant. Furthermore, those affidavits, including that which was based upon information obtained from the eavesdropping, provided sufficient probable cause for issuance of the search warrant (see *People v Wirchansky,* 41 NY2d 130).

Accordingly, the order granting defendants' motion to suppress should be reversed and the motion should be denied.

CARDAMONE, SIMONS, DILLON and DENMAN, JJ., concur.

Order unanimously reversed and motion denied.