*104 OPINION OF THE COURT
Harold J. Rothwax, J.
This is an action for declaratory relief[1] pursuant to CPLR 3001 to determine the propriety of disclosure, in an arbitration proceeding, of conversations seized by law enforcement officers pursuant to an eavesdropping warrant issued by a Justice of this court. The petitioner was intercepted pursuant to the warrant, and the conversations seized were introduced against him in a proceeding to terminate his employment. The respondents, the District Attorney of New York County whose office disclosed the material, and the New York Times Company,[2] to whom the material was disclosed, rely upon an order of this court as the basis for disclosure of these tapes in context of the arbitration proceeding.
The court finds that this is an appropriate action for declaratory relief. The facts necessary to resolution of the issues presented are not in dispute. The petitioner is not a defendant in a criminal case, but alleges a violation of his statutory right of privacy in the intercepted conversations, pursuant to CPL 700.65 and CPLR 4506. This determination is not one which can be made in the context of the labor arbitration proceeding, since the arbitrator has neither jurisdiction nor authority over the District Attorney. (See, Matter of Morgenthau v Erlbaum, 59 NY2d 143, 147-148 [1983].) Moreover, the petitioner does not contend that the Office of the District Attorney acted in bad faith, but under misapprehension of the court’s order and of the mandate of CPL 700.65. The court is satisfied that a declaration of the intended scope of its previous order and meaning of the relevant statutes will suffice to protect the interests of the petitioner. Insofar as the petitioner seeks mandatory relief, that relief is denied in the court’s discretion. (See, Matter of Morgenthau v *105 Erlbaum, supra; cf., e.g., Matter of Dondi v Jones, 40 NY2d 8, 13 [1976].)
This court’s jurisdiction to entertain Mr. Dampman’s motion is based upon its supervisory role in regard to the sealed tapes and warrant applications, and upon the District Attorney’s reliance on a previous order of this court as authority for disclosing these tapes to the Times for use in the arbitration proceeding. (Judiciary Law § 140-b; Matter of Alphonso C. v Morgenthau, 50 AD2d 97, 99 [1st Dept 1975]; People ex rel. Doe v Beaudoin, 102 AD2d 359, 363 [3d Dept 1984].)
PACTS
James Galante, Thomas Carrube, Jackie Piervencenti and John Nobile were supervisory employees of the Metropolitan News Company, a wholesale distributor of newspapers and magazines, and were members of the News and Mail Deliverers Union (NMDU). These men were also subjects of a wide-ranging criminal investigation into corrupt practices centering around Metropolitan and allegedly involving the NMDU leadership. As part of this investigation, six court orders were obtained over a period of a year to intercept conversations over telephone lines including those listed to Galante, Carrube and Nobile, and three orders to eavesdrop on conversations including those in Nobile’s residence. All of these men were targets of the interception. Judges supervising the various warrants all ordered that the tapes be sealed and that such seal not be broken except upon order of a Justice of the Supreme Court, as required by CPL 700.50 (2). Prior to sealing, duplicates of each tape were made for use in the ongoing investigations.
On June 29, 1992 City and Suburban Delivery Systems, a subsidiary of the New York Times Company, purchased Metropolitan News Company. On July 6, 1992 Galante, Carrube, Piervencenti and Nobile were indicted and charged with the crime of enterprise corruption (Penal Law § 460.20 [1] [a]). The Times suspended the indicted employees pending the outcome of the criminal prosecution.
On July 21, 1992 notice pursuant to CPL 700.70 including photocopies of the eavesdropping warrants and supporting applications, including daily line sheets, were furnished to counsel for the indicted defendants. On July 28, 1992 the Assistant District Attorney in charge of the prosecution submitted an unsealing order to this court, which noted that *106 "whereas the district attorney has filed the above material consisting of affidavits, linesheets, progress reports, and other papers with this court and making it part of this court’s file” and "whereas numerous copies of tapes made during the intercepted conversations must be provided to counsel, a process that can be facilitated through commercial copying”, and included the directive that the identified materials "be unsealed and subject to disclosure as part of the court’s file”.[3] The Assistant District Attorney did not seek specific authority to disclose the unsealed matter to anyone other than the defendants, and nothing in the order indicated that disclosure to anyone other than the defendants was contemplated. On July 31, 1992, the Assistant District Attorney notified counsel for the defendants that 1,800 master duplicate tapes of conversations seized pursuant to these warrants were being delivered to a commercial studio for duplication upon demand by any defendant.
The Assistant District Attorney avers that after the unsealing order was signed "pursuant to the language in the order that the materials should be 'subject to disclosure as part of *107 the court file,’ the District Attorney’s office allowed access” to the materials described in the order to those members of the public and press who requested it. In October 1992, lawyers for the Times requested and obtained from the District Attorney copies of the eavesdropping warrants, affidavits, and progress reports as "material * * * in the public record with respect to the industry”. This material included summaries of conversations intercepted from October 24, 1990 until October 10, 1991. Among these materials were affidavits of the Assistant District Attorneys supervising the eavesdropping warrants which recounted conversations seized. Among these were conversations intercepted over Carrube’s residential telephone line between Carrube and Frank Dampman. Dampman was an employee of the Times’ subsidiary and member of the NMDU. Based upon the seized conversations, the Times terminated Dampman’s employment, effective November 2, 1992. The NMDU filed a grievance on Dampman’s behalf, seeking reinstatement.
On November 24, 1992 a meeting occurred pursuant to the labor arbitration agreement between the union and the Times. Dampman was represented at the meeting by an attorney who also represented one of the indicted defendants, Piervencenti. According to the Times’ representatives, the attorney referred to tape recordings he had received in connection with his representation of the defendant and asserted that the tapes exculpated Dampman in regard to the basis for his termination. The attorney denies that he made the assertion or offered to play tapes. In any event, it is agreed that Damp-man’s conversations obtained from the warrant application affidavits of various Assistant District Attorneys were referred to by the Times’ representatives. In December 1992, attorneys for the Times requested and received "a number of’ duplicate tapes intercepted pursuant to the eavesdropping warrants, including the tapes of Carrube and Dampman.
The arbitration hearing began on February 1, 1993. Damp-man’s attorney objected to the use of the tape recordings on the ground that they were unlawfully in the possession of lawyers for the Times. Dampman’s attorney specifically argued that the tapes were not matters of public record, as asserted by the attorneys for the Times, since they had never been presented in a court of law. The arbitrator stated that if the tapes were not admissible in evidence, he would not consider them. The arbitrator asked the parties to brief the issue. Following an adjournment, Dampman’s attorney, citing *108 CPL 700.65, argued that disclosure of the tapes by the District Attorney to the attorneys for the Times was unauthorized. The arbitrator apparently was unpersuaded. Dampman’s attorney offered to obtain a ruling from "the judge who actually signed the order.” Apparently it was agreed between the attorneys that the hearing would proceed subject to the subsequent suppression of the tapes if required. The attorneys for the Times then played the tapes. In response, Dampman’s attorney apparently also played a tape he had obtained in the course of representing Piervencenti. The arbitrator adjourned the hearing without reaching a determination, pending resolution of the issue of the disclosure of the tapes.
Dampman now seeks a determination by this court whether the tapes were properly disclosed by the District Attorney to lawyers for the Times pursuant to the July 28, 1992 unsealing order.
STANDING
Dampman is an "aggrieved person” within the meaning of CPLR 4506 (2) (b) in that he was intercepted during execution of the Carrube warrant. CPLR 4506 (1) bars the use of unlawfully intercepted conversations "in any trial, hearing or proceeding before any court or grand jury, or before any legislative committee, department, officer, agency, regulatory body, or other authority of the state, or a political subdivision thereof.” The statute makes clear that exclusion extends to conversations obtained under an eavesdropping warrant which is insufficient on its face, or to conversations obtained in violation of the terms of a valid eavesdropping warrant. (CPLR 4506 [3] [b], [c].) The burden is on the litigant aggrieved by unlawful interception to move prior to the hearing, before the Justice who issued the warrant, to exclude the evidence obtained under the warrant from the hearing. (CPLR 4506 [4].)
This statutory exclusion is clearly broader than the exclusionary rule judicially adopted to enforce the Fourth Amendment to the Federal Constitution, which is limited to criminal or quasi-criminal proceedings. The rationale behind the statute is not to deter unlawful police conduct, but to protect the privacy of individuals and the integrity of governmental fact-finding proceedings against the use of information obtained through illegal eavesdropping. (Gelbard v United States, 408 US 41, 51 [1972]; United States v Dorfman, 690 F2d 1217, 1226-1228 [7th Cir 1982]; see also, Anthony v United States, *109 667 F2d 870, 879 [10th Cir 1981].) The disclosure or use of information obtained through such means amounts to a separate injury to the privacy interests of the victims of the unlawful interception, apart from the unlawful seizure itself. (Gelbard v United States, supra, at 52; United States v Dorfman, supra, at 1228.) Therefore, Mr. Dampman has a legally cognizable statutory right to prevent disclosure of his conversations, unless such conversations were lawfully intercepted. Moreover, since the tapes and supporting materials were disclosed to attorneys for the Times for the specific purpose of use in the arbitration proceeding which will determine Damp-man’s continued employment, the disclosure was unrelated to the criminal prosecution and the interests of the defendants in the criminal proceeding in which these tapes may be introduced as evidence are not coextensive with Dampman’s interests. (Cf., e.g., United States v Dorfman, supra, at 1228-1229.) Therefore, Dampman has standing to raise the propriety of the use of the intercepted conversations in the labor arbitration proceeding by motion to this court. (See, Anthony v United States, supra, at 877-878.)
The court does not find that Dampman’s attorney waived Dampman’s statutory right to privacy by playing a tape in rebuttal of the recordings introduced into the arbitration proceeding by the Times. It is clear that Dampman’s attorney asserted prior to and throughout the proceeding that disclosure of the tapes was unauthorized and that the use of the tapes in the arbitration proceeding was unlawful.
THE MERITS
A basic premise of CPL article 700 is close judicial supervision over the use of electronic surveillance as an investigative technique and over the use of any information derived from electronic surveillance. (People v Sher, 38 NY2d 600, 604 [1976].) As noted by the Court of Appeals:
“The insidiousness of electronic surveillance threatens the right to be free from unjustifiable governmental intrusion into one’s individual privacy to a far greater extent than the writs of assistance and general warrants so dreaded by those who successfully battled for the Bill of Rights (Olmstead v United States, 277 US 438, 478 [Brandeis, J., dissenting]). Bound up with this right are the individual’s interest in personal autonomy, his need to control the image of his self that is projected to the world, and his right to freedom of expression (1 Dorsen, *110 Bender & Neuborne, Political and Civil Rights in the United States 1048-1049 [4th ed, 1976]). These concerns are particularly germane to our construction of the sealing requirements [of article 700], for it was the Supreme Court’s constitutional analysis in Berger v New York (388 US 41, 60) that gave rise to the statutory command for a prompt return on an eavesdropping warrant (Blakely & Hancock, A Proposed Electronic Surveillance Control Act, 43 Notre Dame Lawyer 657, 677, n 46).
"Appreciation of the constitutional dimensions of the problem has led this court to construe strictly article 700’s sealing requirements (People v Sher, 38 NY2d 600; People v Nicoletti, 34 NY2d 249). A clear implication of those decisions is that, as a drastic and extraordinary remedy (see Berger, supra, p 58; CPL 700.15, subd 4), resort to eavesdropping must be circumscribed by extraordinary safeguards.” (People v Washington, 46 NY2d 116, 121-122 [1978]; see also, People v Liberatore, 79 NY2d 208, 213 [1992].)
The sealing requirement originated in the 1968 Omnibus Crime Control and Safe Streets Act, upon which our State statute is based and which establishes constitutionally derived minimum standards for the conduct of electronic surveillance. (People v Sher, supra, at 603-604.) The Court of Appeals has specifically noted that "Congress in enacting the 1968 act made it absolutely clear that the recordings 'be considered confidential court records’. (Senate Report No. 1097, 1968, US Code & Admin News, pp 2112, 2193.)” (People v Sher, supra, at 604.) The statute requires, "[ijmmediately upon the expiration of the period of an eavesdropping or video surveillance warrant, the recordings of communications or observations made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions.” (CPL 700.50 [2].) The statute also requires that "[applications and warrants issued under this article shall be sealed by the justice.” (CPL 700.55 [1].)
The purpose of these sealing requirements is not only to protect the integrity of the tapes against tampering, but also to protect the confidentiality of the tapes. (People v Sher, supra, at 604; People v Nicoletti, 34 NY2d 249, 253-254 [1974].) The use of duplicate recordings in conducting investigations promotes the purposes of preventing tampering with the originals and aids in establishing chain of custody (People v Nicoletti, supra, at 253-254), but is not sufficient to protect the privacy interests of persons intercepted under the warrant. *111 The protection of privacy was an overriding congressional concern when enacting the Omnibus Crime Control and Safe Streets Act. (Gelbard v United States, supra, 408 US, at 48-49.) For this reason, the statute places specific limits upon the disclosure of information obtained by means of electronic surveillance, whether contained in warrant applications and supporting materials, original tapes or duplicates made from the original recordings. (See, e.g., In re Applications of Kansas City Star, 666 F2d 1168, 1175 [8th Cir 1981].) Applications and warrants "may be disclosed only upon a showing of good cause before a court.” (CPL 700.55 [1].) The statute limits duplicate recordings "for use or disclosure pursuant to the provisions of subdivisions one and two of section 700.65 for investigations.” (CPL 700.55 [2]; see also, People v Washington, supra, 46 NY2d, at 125.) Where a witness giving testimony under oath seeks to disclose information concerning a communication intercepted pursuant to the statute, such testimony is specifically limited to criminal proceedings, including Grand Jury presentations, and to actions for forfeiture pursuant to CPLR articles 13A or 13B. (CPL 700.65 [3].) Before such testimony may be admitted, the presence of the seal provided for by CPL 700.50 (2), or a satisfactory explanation of the absence thereof, "shall be a prerequisite for the use or disclosure of the contents.” (CPL 700.65 [3].)
For the foregoing reasons, article 700 obviously does not permit a person who has received information concerning a communication intercepted pursuant to an eavesdropping warrant to disclose the contents of that communication while testifying as a witness in a labor arbitration proceeding. Our State statute (CPL 700.65 [3]) is more restrictive in this regard than the Federal counterpart (18 USC § 2517 [3]) which permits the use of such information "in any proceeding * * * held under authority of the United States or of any State or political subdivision thereof.” (See, e.g., Matter of Spinelli, 212 NJ Super 526, 515 A2d 825, 829 [1986].)
The District Attorney argues that disclosure of the warrant applications and supporting materials, and of copies of the tape recordings was permissible nonetheless either because the July 28, 1992 order of the court authorized the disclosure or incidentally to the proper performance of the official duties of the prosecutor. The court finds neither of these arguments persuasive.
The portion of the court’s order of July 28 relied upon by the District Attorney states that the eavesdropping warrants *112 and supporting materials "be unsealed and subject to disclosure as part of the Court’s file”, and that duplicates of the tape recordings made pursuant to the warrants "may similarly be subject to disclosure as part of the Court’s file.” The Assistant District Attorney who submitted this order affirms that it was sought to effect "planned disclosure to a private party”, apparently to accommodate the requests of attorneys for the Times and possibly members of the media who are not currently before the court. In fact, this "planned disclosure” was never revealed to the court at the time the unsealing order was obtained.
The stated purposes of the order submitted to the court were the disclosure to the defendants of materials in support of the warrants, and to facilitate the commercial duplication of copies of the original tape recordings to be provided to the defendants. The Assistant District Attorney argues that no court order was required to provide duplicate recordings to the defendants whose conversations were intercepted. While it is true that the District Attorney did not need a court order to make duplicates of the original tapes available to defendants for copying (People v Sher, supra, 38 NY2d, at 604; People v Nicoletti, 34 NY2d, supra, at 253-254), a court order was required by the statute to unseal the warrants and applications in support thereof (CPL 700.55 [1]) and any original tapes for purposes of making such duplicates (CPL 700.55 [2]). The use of the phrase "subject to disclosure as part of the court’s file” in the submitted order was not adequate to notify the court and the parties whose privacy interests were affected that disclosure to the general public was among the purposes of the unsealing order. These documents and tapes are always part of the court’s files, insofar as the court retains constructive custody over the materials under seal. (CPL 700.55.) However, they are confidential court records. (People v Sher, supra, at 604.) Even the warrants may only be disclosed by order of the court upon a showing of good cause. (CPL 700.55 [1].) The good cause requirement calls for at least some consideration by the court of the privacy interests of those whose conversations have been intercepted, not limited to the indicted defendants. (See, e.g., In re Applications of Kansas City Star, supra, 666 F2d, at 1176.) Here the District Attorney never sought to establish before this court that disclosure of these materials to the attorneys for the Times was "for good cause”. Therefore, the disclosure was not authorized by the terms of the order.
*113 The District Attorney also argues that disclosure of the warrant materials and duplicate tapes was, in any event, a “use appropriate to the proper performance of [a law enforcement officer’s] official duties”, which does not require a judicial order. (CPL 700.65 [2].) CPL 700.65 governs the use of information intercepted under an eavesdropping warrant. Information obtained by an authorized interception may be disclosed by any person while giving testimony under oath in a criminal proceeding or forfeiture action (CPL 700.65 [3]); by one law enforcement officer to another law enforcement officer to the extent that disclosure is appropriate to the performance of the official duties of each officer (CPL 700.65 [1]); and may be used by any law enforcement officer "to the extent such use is appropriate to the proper performance of his official duties.” (CPL 700.65 [2].) Of these bases for disclosure, the first two (CPL 700.65 [3], [1]) obviously do not apply to these facts, since the lawyers for the Times are not law enforcement officers and since labor arbitration is not among those proceedings in which intercepted communications may be introduced in evidence.
The District Attorney asserts that disclosure to the lawyers for the Times was governed by CPL 700.65 (2). The argument is that it was part of the prosecution’s official duty to make the warrants, underlying applications and duplicate copies of the tapes available to the defendants, and that by so doing they incorporated such material into the public record. The District Attorney contends that once any disclosure of the material has been made, the public has a qualified First Amendment right of access to the material incidental to the public nature of judicial proceedings. (Matter of Associated Press v Bell, 70 NY2d 32 [1987].)
The precedent cited by the District Attorney is simply inapplicable at this stage of the proceedings. At this juncture, there has been no intentional disclosure of any information obtained as a result of the eavesdropping in any public proceeding before this court, nor any order of this court unsealing these materials for any purpose other than receipt by the defendants. (See, e.g., Boettger v Loverro, 521 Pa 366, 555 A2d 1234, 1239-1240 [1989].) An order to disclose warrants, applications and supporting materials, and copies of the tapes to the defendants does not incorporate the disclosed materials into the court’s files and render them accessible to the general public. The three subdivisions of section 700.65 permit disclo *114 sure only of information obtained "by any means authorized by” article 700. Implicitly, there should be no disclosure of any information obtained by unauthorized means. (See, People v Einhorn, 35 NY2d 948 [1974]; Gelbard v United States, 408 US 41, 51-52, supra; CPLR 4506 [1]; see, e.g., Anthony v United States, 667 F2d 870 [10th Cir 1981], supra.) The defendants are entitled as a matter of law to receive copies of the warrants and supporting materials (CPL 700.70) and of tapes of conversations which the People intend to use at trial (CPL 240.20 [1] [g], [h]) to enable the defendants to contest the legality of the interception. (People v Liberatore, 79 NY2d 208, 213-214 [1992], supra). The Supreme Court noted that such disclosure may be limited to the defendant’s own conversations or those which took place on the defendant’s premises. "In addition, the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect”, to limit prejudice to others whose conversations have been intercepted. (Alderman v United States, 394 US 165, 184-185 [1969].) Therefore, this disclosure does not incorporate these documents into the court’s file for purposes of public access, as contended by the People. (See, e.g., In re Applications of Kansas City Star, 66 F2d 1168, 1175-1176, supra.) Since there has been no public disclosure of the information obtained as a result of the eavesdropping, the public’s right of access to judicial proceedings is not yet implicated (cf., Matter of Associated Press v Bell, supra; United States v Gerena, 869 F2d 82, 85 [2d Cir 1989]), and those cases in which the information has been disclosed previously in the context of a public hearing are simply inapposite. (See, e.g., Matter of Spinelli, 212 NJ Super 526, 515 A2d 825, 830, supra; Spatafore v United States, 752 F2d 415, 417 [9th Cir 1985].)
Nor does the statute permit the District Attorney to disclose this information at his discretion, according to his evaluation of the public’s interest. Disclosure is specifically limited to the proper performance of the prosecutor’s official duties. The Court of Appeals has noted (People v Mastrodonato, 75 NY2d 18, 22 [1989]) that CPL 700.65 was modeled on the Federal wiretapping statute, 18 USC § 2517, and that the legislative history of the Federal act limits use of intercepted communications, appropriate to the proper performance of law enforcement duties, to such disclosures as are required to establish probable cause to arrest or to search, or to develop witnesses. *115 (Supra, at 23.) In the context of the official duties of a prosecutor, such uses would include those necessary to bring about a conviction for crimes disclosed by the eavesdropping, such as to prepare witnesses for trial (see, e.g., United States v Ricco, 566 F2d 433, 435 [2d Cir 1977]) and to support pretrial briefs and memoranda. (See, e.g., United States v Gerena, supra, 869 F2d, at 85.) The disclosure here was not made pursuant to any function associated with the prosecution’s preparation for trial.
No doubt, as the District Attorney contends, the press and members of the public have a right of access to such material when incorporated into pretrial motion papers (United States v Gerena, supra, 869 F2d, at 85). However, the statute carefully circumscribes use of such materials based upon the recognition that disclosure may implicate fundamental privacy interests not only of defendants, but also of witnesses and third persons such as Bampman. (See, Scott v United States, 573 F Supp 622 [MD Tenn 1983], mod sub nom. Resha v United States, 767 F2d 285 [6th Cir 1985], supra.) Even when such materials become part of the record in the context of criminal proceedings, the public’s right to access to the material is qualified. The First Amendment right of access to judicial proceedings does not mean that intercepted conversations obtained under an eavesdropping warrant automatically become public. (United States v Gerena, supra, 869 F2d, at 85.) Where necessary to protect the privacy interests of nondefendants, or to protect the defendants’ right to a fair trial, such material may be continued under seal, even though incorporated into motion papers (Boettger v Loverro, 521 Pa 366, 555 A2d 1234, supra [in response to motion to suppress]) or introduced in evidence at pretrial hearings. (In re Applications of Kansas City Star, supra, 666 F2d, at 1173, n 5 [bail hearing].) The court must balance the public’s right of access against the privacy interests of the defendants, witnesses and third parties. Redaction or continued sealing of intercepted conversations to protect these privacy interests is permissible where the court finds that such privacy interests outweigh the public’s interest in access. (Matter of New York Times Co., 834 F2d 1152, 1154 [2d Cir 1987]; Matter of Associated Press v Bell, 70 NY2d 32, 38-39, supra.) Finally, it is the court, not the prosecution, that must make this determination in the first instance, since "once a paper is publicly filed, the damage is done.” (United States v Gerena, supra, 869 F2d, at 86.)
At this stage of the proceedings, the legality of the eaves *116 dropping under which these conversations were intercepted has not been determined. Since private conversations obtained by means of unauthorized interception should never be disclosed (CPLR 4506 [1], [3] [b], [c]) except perhaps in context of a hearing upon a motion to determine the legality of the interception itself, this court will not permit any disclosure of any conversation obtained by these warrants except under seal by order of this court until such time as the legality of the interception has been established. (Cf., United States v Gerena, supra [unsuppressed conversations].) Once the legality of the interception has been resolved, or in the event it is not raised by the defendants in the criminal proceeding, the court will entertain an application by the District Attorney for disclosure of the information based upon a showing of good cause, and with notice and opportunity to be heard by persons whose conversations the District Attorney seeks to disclose. (See, United States v Gerena, supra.)
The court therefore finds that disclosure of these warrants, applications and tapes to the Times was unauthorized by previous orders of the court or by statute. Therefore, any copies of warrants, applications in support of warrants or other materials related thereto and previously under seal, any duplicate tape recordings made of conversations seized pursuant to these warrants, and any other document, tape or thing containing information derived therefrom, should be returned to the office of the District Attorney for safekeeping until further order of the court.
The court orders that the District Attorney submit all references to conversations obtained pursuant to these warrants in any pretrial motion or proceeding under seal, until further order of the court.

. The petitioner also seeks an order excluding the materials from use in the arbitration proceeding. Such an order may be available to the petitioner in the context of the arbitration proceeding under CPLR 4506 (3). That section provides a remedy at law where the aggrieved person alleges that the interception was unlawful. Here the petitioner has not attempted to demonstrate that the warrant was improperly issued or that the conversations were improperly intercepted. The issue presented is not the legality of the interception, but the propriety of the disclosure. Therefore, the petitioner has not demonstrated the availability of the statutory remedy at this time. (See also, Resha v United States, 767 F2d 285 [6th Cir 1985].)

. The New York Times Company has submitted to the jurisdiction of the court by entering an appearance through counsel in response to petitioner’s motion. (CPLR 320 [b].)

. The full text of the order was as follows:
"whereas the above defendants have been arraigned before the Court and the People have served notice of eavesdropping evidence pursuant to CPL 700.70, and have made said material available to defendants for inspection and review in satisfaction of CPL 700.70; and
"whereas the District Attorney has filed the above material consisting of affidavits, linesheets, progress reports, and other papers with this Court and making it part of the Court’s file; it is hereby [sic]
"whereas numerous copies of tapes made during the intercepted conversations must be provided to counsel, a process that can be facilitated through commercial copying; it is hereby
"ordered that the above material consisting of, eavesdropping warrants and applications in support thereof; and other papers filed with this Court, and made available to the above defendants, be unsealed and subject to disclosure as part of the Court’s file; and it is further
"ordered that the duplicate tape recordings of the recordings made pursuant to those warrants on lines [identified by telephone numbers]; and the bug in the Nobile residence may similarly be subject to disclosure as part of the Court’s file;
"ordered that the original tape recordings shall remain under seal as previously ordered by the supervising justices;
"ordered that the warrants and other papers and the duplicate recordings filed with the Court be kept in the custody of the District Attorney’s Office for safekeeping and storage.
"New York, New York __
"July 28,1992 Hon. Harold J. Rothwax
"Justice of the Supreme Court”