**Homer Lee SCOTT**

v.

**UNITED STATES of America.**

**Jack DICKENS**

v.

**UNITED STATES of America.**

**Charles J. RESHA, III**

v.

**UNITED STATES of America.**

**Nos. 81–3697, 3–82–0076 and 3–82–0077.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Oct. 27, 1983.

Hugh C. Howser, Jr., Nashville, Tenn., for plaintiffs.

Robert E. Rice, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

This action to recover the payment of wagering excise taxes, penalties, and interest [1] is before this Court on plaintiffs' motion for summary judgment. In their motion for summary judgment plaintiffs allege that the only evidence the Internal Revenue Service used in assessing the wagering tax at issue was obtained in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20, and that suppression of the evidence is the proper remedy for this violation. Defendant opposes this motion, asserts that disclosure was proper, and contends that even if disclosure were unauthorized the Court should not suppress the evidence.

## I. Background

Pursuant to court order, the FBI conducted electronic surveillance of plaintiffs to investigate alleged gambling operations.[2] The information gained from the wiretap was used by the FBI to obtain search warrants for the premises of several individuals, including plaintiffs. Agents seized various documents during the search, but plaintiffs have never been indicted or tried for any of the offenses designated in the wiretap order or search warrants. Nevertheless, local newspaper

---

**1.** Plaintiffs file this cause of action pursuant to their authority to sue under 28 U.S.C. § 1346(a)(1) as amended.

**2.** The surveillance warrant stated that plaintiffs were suspected of violating 18 U.S.C. § 1955 and § 1084.

accounts of the raids aroused the curiosity of IRS agents, working in the Excise Tax Division, who inquired of the FBI about the information obtained in the search. Individuals engaged in wagering must pay an excise tax pursuant to 26 U.S.C. § 4401 *et seq.*, which plaintiffs had done. The IRS agents, however, wanted to investigate whether plaintiffs had paid the proper amount of tax. The FBI allowed the IRS agents to photocopy documents seized and from these documents the agents computed the additional assessment at issue in this case.

Plaintiffs objected to the assessments and filed protests with the IRS. In addition, plaintiffs filed suit for declaratory and injunctive relief in the Middle District of Tennessee, but their cause was dismissed for violation of the Anti-Injunction Act, 26 U.S.C. § 7421. The Sixth Circuit affirmed, *Dickens v. United States*, 671 F.2d 969 (6th Cir.1982).[3] Plaintiffs subsequently paid a portion of the assessment to the IRS and filed a protest, which was unanswered. This suit was then filed to recover the amount paid with interest, and costs including attorney fees. The complaint alleges first that the taxes were illegally assessed because they were based on information disclosed in violation of 18 U.S.C. § 2517, and second that 18 U.S.C. § 2515 requires suppression of the evidence obtained through the unauthorized disclosure. Defendants counterclaimed for the assessed taxes that remain unpaid. Plaintiffs then filed this motion for summary judgment.

This action is ripe for summary judgment because the determining issue is a legal rather than a factual one. Both parties essentially agree that whether or not the evidence obtained by the IRS from the FBI is suppressed will determine the lawsuit. Without the evidence the IRS cannot meet its burden of proving the plaintiffs' tax liability. *Griffin v. United States*, 588 F.2d 521, 528 (5th Cir.1979).

■ Accordingly, and for the reasons stated below, this Court holds that the disclosure by the FBI to the IRS violates 18 U.S.C. § 2517 and that this violation merits suppression of the evidence disclosed. Consequently, the Court grants plaintiffs summary judgment and awards them the relief requested.

## II. Disclosure Under Title III

Title III effectively prohibits all electronic surveillance not specifically provided for in the Act. S.Rep. No. 1097, *reprinted in* 2 U.S.Code Cong. & Admin.News 1968, 90th Cong., 2d Sess., 2112, at p. 2113; *United States v. Giordano*, 416 U.S. 505, 514, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341, 353 (1974). Inherent in that prohibition is a corresponding prohibition on the use of evidence obtained by electronic surveillance. *See* Title III, Pub.L. No. 90–351, § 801(b), 82 Stat. 211 (1968) (congressional statement of findings). Plaintiffs contend that the disclosure of surveillance evidence by the FBI to the IRS violates section 2517 of Title III. Defendant's position is that the disclosure is authorized in Title III by both section 2517(1) and section 2517(2).

■ Section 2517(1) provides:

(1) Any investigative or law enforcement officer who, by any means authorized by this chapter [18 U.S.C. §§ 2510 et seq.], has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

Defendant argues that the FBI agent who disclosed the information and the IRS agent who received it are both investigative or law enforcement officers and that the disclosure was appropriate to the proper performance of the duties of either officer. In direct support of its position de-

---

**3.** The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).

fendant cites *United States v. Iannelli,* 477 F.2d 999 (3d Cir.1973), *aff'd on other grounds,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975).[4] The Third Circuit Court of Appeals in *Iannelli* concludes without explanation that "Internal Revenue Service agents are investigative or law enforcement officers within the meaning of 18 U.S.C. § 2510(7) and disclosure was appropriate to the performance of their duties. 18 U.S.C. § 2517(1)." *Iannelli, supra,* at 1001. This Court disagrees.[5]

Section 2510(7) of Title III specifically defines "investigative or law enforcement officer" to mean

> any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter [19 U.S.C. §§ 2510 et seq.], and any attorney authorized by law to prosecute or participate in the prosecution of such offenses.

This provision clearly limits the officials authorized to make or receive § 2517(1) disclosures by defining investigative or law enforcement officer in terms of the enumerated offenses in section 2516, none of which concerns a violation of the Internal Revenue Code. To ignore the clear meaning of that limitation renders nugatory both section 2510(7) and section 2517.[6]

■ Defendant also argues that section 2517(2) authorizes the FBI disclosure in this case. Section 2517(2) provides:

> (2) Any investigative or law enforcement officer who, by any means authorized by

this chapter [18 U.S.C. §§ 2510 et seq.], has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

Defendant argues that an FBI agent may be said to be properly performing his duties by disclosing information relevant to the enforcement of the tax laws to the IRS. This argument fails for two reasons. First, if this disclosure were intended to be within the performance of the officer's duties in section 2517(2), then section 2517(1) would be totally unnecessary. Why would Congress limit disclosure in section 2517(1) only to throw it wide open in section 2517(2)? The only logical conclusion is that disclosure is not included in the definition of "use" as it is intended in section 2517(2). "Use" in section 2517(2) means use in the officer's own departmental investigation and prosecution. In the legislative history to Title III, Congress states that section 2517(2) "envisions use of the contents of intercepted communications, for example, to establish probable cause for arrest, to establish probable cause to search, or to develop witnesses." S.Rep. No. 1097, *supra,* at 2188 (citations omitted). The provision does not envision disclosure to any government official who happens to knock on the door.

■ Second, to extend the authorized disclosure of surveillance evidence beyond that defined in section 2517(1) would autho-

---

**4.** *But see Fleming v. United States,* 547 F.2d 872, 875 n. 4 (5th Cir.1977).

**5.** The court's holding in *Iannelli* is not as directly supportive of defendant's position as it may seem. *Iannelli* was a criminal prosecution rather than a tax refund suit, and violation of section 2517 was just one of many grounds on which defendant attempted to get surveillance evidence suppressed. The prosecution was for a crime designated in the surveillance warrant. Defendant in this case also cites as support *Fleming v. United States,* 547 F.2d 872 (5th Cir. 1977), and *Griffin v. United States,* 588 F.2d 521 (5th Cir.1979). The Court in *Fleming* held surveillance evidence admissible in civil actions to collect wagering taxes, at least when the evi-

dence is already part of the public record of a prior criminal prosecution. The court declined to hold that the disclosure of the evidence to the IRS was authorized under section 2517, stating only that the provision "is not a model of clarity." The court held that whether or not the provision was violated, the evidence was admissible under the circumstances. The court in *Griffin* followed the decision in *Fleming. See infra* note 21. *But see James v. McKeever,* 33 A.F.T.R. ¶ 198,502 (D.Ariz.1973).

**6.** Section 2517 was drafted largely to allow close federal, state, and local cooperation in authorized investigations. S.Rep. No. 1097, *supra,* at 2188.

rize unconstitutional invasions of privacy. The constitutional framework for Title III was derived from *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).[7] The Supreme Court in both *Berger* and *Katz* stated that it had approved the electronic surveillance in *Osborn v. United States*, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966), because "no greater invasion of privacy was permitted than was necessary under the circumstances." *Berger, supra,* 388 U.S. at 56–57, 87 S.Ct. at 1882; *Katz, supra,* 389 U.S. at 355, 88 S.Ct. at 513. Title III drafters balanced law enforcement interests and personal privacy interests as guaranteed by the fourth amendment in constructing a statute within the limits prescribed by *Berger* and *Katz.* The Supreme Court in *Berger* stated that the basic purpose of the fourth amendment, "as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Berger, supra,* 388 U.S. at 53, 87 S.Ct. at 1880. Plaintiffs in this case had a protected privacy interest in their communications guaranteed by both the fourth amendment and Title III.[8] Title III and the fourth amendment allow invasions of that privacy for very particular and specific law enforcement uses as defined in a judicially authorized warrant.[9] The FBI in this case was judicially authorized to invade the plaintiffs' privacy to investigate violations of specific gambling laws. Plaintiffs retain a privacy interest in their communications for all other purposes. For the FBI to disclose the results of their investigation to IRS agents simply because the agents requested disclosure invades this privacy and in no way furthers the law enforcement interest judicially defined in the surveillance order. Such disclosure is nothing more than "an arbitrary invasion by government officials."[10] To interpret Title III as authorizing disclosure under these circumstances would leave the doors open for widespread invasions of privacy in violation of the fourth amendment and against the clear legislative intent of the statute. Thus, the Court holds that the disclosure by the FBI to the IRS of the contents or fruits of electronic surveillance conducted legally or illegally is in violation of 18 U.S.C. § 2517.

## II. Suppression

 Defendant argues that, even if the FBI disclosure violates section 2517, the violation should not be suppressed because section 2515, the Title III suppression rem-

---

7. Congress specifically drafted Title III to conform to the standards in *Berger* and *Katz.* S.Rep. No. 1097, *supra,* at 2153.

8. The Supreme Court in *Katz* stated:

 For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.
 *Katz, supra,* 389 U.S. at 351, 88 S.Ct. at 511.

9. Arguably, the plain view exception to the warrant requirement of the fourth amendment defined by the Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), is codified for electronic surveillance in section 2517(5). Section 2517(5) requires a judicially approved retroactive amendment to the surveillance warrant to include any "plain view" seizures relating to undesignated crimes. Thus, although section

2517(5) allows intrusions beyond those specified in the surveillance warrant, it applies only to authorized officials and requires close judicial supervision. Section 2517(5) in no way authorizes disclosure of information seized relating to designated or undesignated crimes, and in fact provides that no evidence of other crimes may be admitted without timely judicial amendment to the warrant. *See* Goldsmith, *The Supreme Court and Title III: Rewriting the Law of Electronic Surveillance,* 74 J.Crim.Law & Criminology 1, 141–50 (1983).

10. Close judicial supervision of the procurement and use of surveillance evidence is constitutionally mandated, *see Katz, supra,* 389 U.S. at 356, 88 S.Ct. at 514, and statutorily required, *see* Title III, Pub.L. No. 90–351, § 801(b), 82 Stat. 211 (1968) (congressional statement of findings). Unauthorized disclosure and use of surveillance evidence undermines this judicial supervision principle. What was essentially a search and seizure of surveillance evidence by the IRS officer was conducted outside the judicial process.

edy, requires suppression only when the surveillance itself was illegal. This argument, although adopted by some lower courts,[11] totally ignores the Title III suppression analysis developed by the Supreme Court in *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), and *United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974).[12] *See also* Goldsmith, *The Supreme Court and Title III: Rewriting the Law of Electronic Surveillance,* 74 J.Crim.Law & Criminology 1, 76–112 (1983).

Section 2518(10)(a) lists the following three bases for which an aggrieved party may move for suppression under section 2515:

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Defendant in this case contends that plaintiffs when they allege improper disclosure do not allege any of these section 2518(10)(a) violations. Presumably defendant is arguing for a narrow interpretation of "intercept" in section 2518(10)(a)(i) that includes only constitutional violations. The Supreme Court, however, specifically rejected this argument in *Giordano, supra,* 416 U.S. at 527, 94 S.Ct. at 1832, and held that

[t]he words "unlawfully intercepted" are themselves not limited to constitutional violations, and we think Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that directly and substan-

tially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.

As stated by the Supreme Court in *Donovan,* and as applied by the Sixth Circuit Court of Appeals in *United States v. Landmesser,* 553 F.2d 17 (6th Cir.1977), suppression is warranted if Congress intended the Title III provision that was violated to play "a central, or even functional, role in guarding against unwarranted use of wiretapping or electronic surveillance." *Donovan, supra,* 429 U.S. at 437, 97 S.Ct. at 673; *Landmesser, supra,* 553 F.2d at 22. In addition, some courts have interpreted the Supreme Court's decision in *Chavez* to imply that even violations of a central provision will not require suppression if the purpose the provision was designed to accomplish has been satisfied in spite of the violation.[13] The Supreme Court also discussed in *Donovan, supra,* 429 U.S. at 436 n. 23, 439 n. 26, 97 S.Ct. at 672 n. 23, 673, n. 26, and the Sixth Circuit considered significant in *Landmesser, supra,* 553 F.2d at 22, the wilfullness of the violation and any resulting prejudice. In fact, most jurisdictions recognize that intentional violations of even noncentral provisions may require suppression. *See* Goldsmith, *supra,* at 119. The Ninth Circuit in *United States v. Chun,* 503 F.2d 533 (9th Cir.1974), *on remand* 386 F.Supp. 91 (D.C. Hawaii 1974), organized these considerations into the following three part test that since has been adopted by the Fourth, Fifth, Seventh, and Eighth Circuits:[14] (1) Consider whether the provision violated is a central or functional safeguard in the statutory scheme to prevent abuses; (2) If the violation is central,

---

**11.** *See, e.g., Iannelli, supra; Fleming, supra; United States v. Horton,* 601 F.2d 319 (7th Cir. 1979), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197.

**12.** The Supreme Court's suppression analysis developed in *Giordano* and *Chavez* was further refined in *United States v. Kahn,* 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974); and *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977).

**13.** *See infra* note 14 and cases listed therein.

**14.** *See United States v. Diana,* 605 F.2d 1307 (4th Cir.1979), *cert. denied,* 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787; *United States v. Caggiano,* 667 F.2d 1176 (5th Cir.1982); *United States v. Lawson,* 545 F.2d 557 (7th Cir.1975); *United States v. Civella,* 533 F.2d 1395 (8th Cir.1976).

consider whether the purpose the provision was designed to accomplish has been satisfied in spite of the violation; (3) Consider whether the violation was wilful and prejudicial.

Applying all of these considerations to the violation by defendant of section 2517, this Court finds that the provision is central to the Title III statutory scheme, that the purpose of the provision was not accomplished in spite of the violation of the provision by the FBI, and that the violation was wilful and prejudicial.

■ Violation of provisions of Title III considered "post-intercept" provisions, such as the section 2518(8)(a) sealing requirement and the section 2518(8)(d) notice requirement, generally have been held by most courts not to merit suppression absent wilfullness and prejudice.[15] The reasoning of these courts has been that post-intercept violations would not have precluded judicial authorization and thus are not central to the congressional intention to limit the use of intercept procedures. *See, e.g., Donovan, supra,* 429 U.S. at 435, 97 S.Ct. at 672. In other words, compliance with post-intercept requirements does not lessen the invasion of privacy by the government and thus, absent a showing of prejudice, violations of these provisions should be considered "harmless errors." [16]

The section 2517 disclosure provision is a post-intercept requirement, but the provision differs markedly from the other post-intercept provisions because an unauthorized disclosure is an additional invasion of privacy. Unauthorized disclosure extends the use of the results of the surveillance beyond that necessary to the circumstances, in direct violation of congressional intention and constitutional requirements. Whether the violation would have affected the intrusion of the original surveillance is not the only consideration in this case. Violation of section 2517 may not affect the judicial authorization of the original surveillance, but it is in essence a nonjudicially authorized additional intrusion. Violation of the sealing requirement, for example, absent evidence of tampering, does not result in an additional intrusion into the constitutionally protected privacy of the aggrieved individual. Violation of the nondisclosure requirement does. Moreover, the additional intrusion is accomplished with none of the required statutory and constitutional safeguards.[17] Unauthorized disclosure is tantamount to unauthorized search and seizure. No difference exists between limiting the use of surveillance and limiting the use of the fruits of surveillance. To conclude that central to congressional intention is the limitation of surveillance requires the conclusion that also central to that intention is the limitation of the disclosure of surveillance results.

In addition, the purpose of limiting disclosure—to limit the intrusion—also has not been met in this case.[18] Although the

---

15. *See* C. Fishman, Wiretapping and Eavesdropping § 255 (1978 & 1982 Supp.); J. Carr, The Law of Electronic Surveillance § 6.03 (1977 & 1983 Supp.); Goldsmith, *supra,* note 9, at 154.

16. *See* J. Carr, *supra* note 15, at 355.

17. For example, the IRS was not required to show probable cause for access to the surveillance materials, they were not required to particularize their search but were given general perusal of all documents seized under the FBI warrant, and they were not required to show exhaustion of investigative alternatives. In fact, the IRS failed even to use their authority to summon plaintiffs' tax records before resorting to a search of the surveillance evidence.

18. The Fifth Circuit Court of Appeals in *Fleming* and *Griffin, supra* note 5, reasoned in those cases that the purposes of limiting disclosure would not be furthered by suppression of evidence disclosed by the FBI to the IRS. In both *Fleming* and *Griffin* the evidence had been presented previously in court, one in a criminal prosecution and the other at the time defendant entered a guilty plea. The court reasoned that the introduction of the surveillance evidence into a public forum deprived the parties of any further privacy interest in their communications. In addition, the court found no evidence that the surveillance by the FBI was a pretext for obtaining evidence for the IRS. This Court does not adopt the analysis of the Fifth Circuit, but finds nevertheless that the evidence in this case merits suppression even under the standards of *Fleming* and *Griffin.* No evidence of pretext exists in this case, but the lack of any criminal prosecution of plaintiffs throws the

Court takes no position on the issue at this time, situations may exist in which unauthorized disclosure does not mandate suppression because suppression would not further the purpose or policy behind section 2517. For example, the FBI violation of section 2517 might not require suppression of this evidence in a criminal prosecution for the crime for which the original warrant was obtained, had one resulted.[19] In that case the prosecution would have had judicially authorized access to the evidence with or without the disclosure; thus, admission is not an additional intrusion caused by the disclosure. In this case, however, the evidence is being offered for a use that Congress specifically intended to prevent. Section 2517 was drafted to limit disclosure to certain officials to protect against the unauthorized invasions of privacy resulting from the widespread use of the fruits of surveillance. But for the disclosure, defendants would not have access to the evidence. Moreover, any purpose of effective law enforcement that issuance of this surveillance warrant served will not be burdened by suppression of the evidence here.

Finally, even if section 2517 were considered a noncentral provision of Title III, suppression should result because the violation was intentional[20] and prejudicial. *See Chun, supra,* at 542–43; *Donovan, supra,* 429 U.S. at 436 n. 23, 429 n. 26, 97 S.Ct. at 672, n. 23, 673 n. 26.

Defendant argues that the proper remedy for a section 2517 violation is a section 2520 civil suit for damages. Nothing in section 2520 or its legislative history, however, suggests that it is meant to be an exclusive remedy in any situation. Certainly plaintiffs in this case at one time had the option of a section 2520 remedy, but that

option in no way precludes section 2515 suppression.

Accordingly, the Court grants plaintiffs summary judgment and awards them the relief requested, specifically refund of the illegally assessed taxes with interest. *United States v. Jones,* 542 F.2d 661 (6th Cir.1976).

---

balance on that issue more towards their favor. Moreover, the lack of prosecution distinguishes this case from *Fleming* and *Griffin* because here the surveillance evidence was never introduced as evidence at trial. Defendants argue that the evidence was submitted when the plaintiffs sued for injunctive and declaratory relief, but that suit was essentially a suppression motion, and the introduction of evidence in a suppression

motion can hardly be said to negate any privacy interest in that evidence. If so, then suppression hearings would be self-defeating.

19. *See, e.g., Iannelli, supra* note 5.

20. Nowhere does defendant assert that the disclosure was accidental or unintentional.