IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
DET. LT. EDMUND SPINELLI.

Superior Court of New Jersey
Law Division (Criminal)
Salem County

Decided March 25, 1986.

*Frank H. Hoerst,* III, Prosecutor, Salem County.

*John M. Waters,* Jr., for Borough of Penns Grove (*Waters and Sherman,* attorneys).

*Lorraine A. DiCintio,* for Edmund Spinelli (*Ballen, Keiser & Gertel,* attorneys).

SERATA, J.S.C.

This is an application by the chief of police of the Borough of Penns Grove to obtain tape recordings of telephone conversations authorized by the Salem County prosecutor pursuant to *N.J.S.A.* 2A:156A–4(c).

This opinion supplements the court's oral decision.

# I.

## *Facts.*

On February 4, 1986, the Borough of Penns Grove police department filed disciplinary charges against Detective-Lieutenant Edmund Spinelli pursuant to *N.J.S.A.* 40A:14–147. The complaint charged that Spinelli violated the rules and regulations of the Penns Grove police department by "engaging in conduct unbecoming to an officer" in that on diverse dates in 1985 and 1986, while at work, he made telephone calls using "lewd, immoral and offensively coarse language or in such other manner likely to cause annoyance or alarm to one Patricia Glosson of Pennsville, New Jersey."

The telephone calls in question were recorded by officers of the Salem County prosecutor's office pursuant to *N.J.S.A.* 2A:156A–4(c) of the New Jersey Wiretapping and Electronic Surveillance Act which states that it is not unlawful under the act for:

c. Any person acting at the direction of an investigative or law enforcement officer to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception; provided, however, that no such interception shall be made unless the Attorney General or his designee or a county prosecutor within his authority determines that there exist a reasonable suspicion that evidence of criminal conduct will be derived from such interception;

It is undisputed that the interception was properly made with the consent of Patricia Glosson. *See State v. Parisi,* 181 *N.J.Super.* 117 (App.Div.1981).

The Borough of Penns Grove now seeks to use the contents of the recorded tapes in a disciplinary proceeding against Spinelli. In order to do so it needs an order authorizing the prosecutor to release the tapes to the mayor, the members of borough council, solicitor, chief of police, and any psychiatric physician employed by the borough in conducting a psychiatric evaluation of Spinelli.

Thus the question presented is: Under the New Jersey Wiretapping and Electronic Surveillance Control Act, *N.J.S.A.*

2A:156A–1, *et seq.*, is it lawful to disclose tape recordings properly intercepted under the one-party consent provision, *N.J.S.A.* 2A:156A–4(c), to public officials of the Borough of Penns Grove for the purpose of using the recordings in a disciplinary proceeding of one of its police officers?

## II.

### *The New Jersey Wire Tap Act.*

*N.J.S.A.* 2A:156A–17 and –18 govern the use and disclosure of the contents of oral or wire communications obtained in accordance with the act. The provisions are as follows:

2A:156A–17.   Disclosure or use of contents of wire or oral communications or derivative evidence

a.   Any investigative or law enforcement officer or other person who, by any means authorized by this act, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose or use such contents or evidence to investigative or law enforcement officers of this or another state, any of its political subdivisions, or of the United States to the extent that such disclosure or use is appropriate to the proper performance of his official duties.

b.   Any person who, by any means authorized by this act, has obtained any information concerning any wire or oral communication or evidence derived therefrom intercepted in accordance with the provisions of this act, may disclose the contents of such communications or derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of this or another state or of the United States or before any Federal or State grand jury; provided, however, that the contents of any wire or oral communication may be initially disclosed solely through the use of the testimony of a witness to such communication or the actual recording of the communication.

c.   The contents of any intercepted wire or oral communication, or evidence derived therefrom, may otherwise be disclosed or used only upon a showing of good cause before a court of competent jurisdiction.

2A:156A–18.   Interception of communications relating to other offenses; disclosure or uses;  application

When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsection 17.   Such contents and any evidence derived therefrom may be used under subsection b of section 17 when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise inter-

cepted in accordance with the provisions of this act. Such application shall be made as soon as practicable.

There are no New Jersey cases which shed light on the issue in the instant case. State legislative history is scant, but there is some indication that disclosure is meant to be limited to serious crimes. In the report on the New Jersey Wiretapping and Electronic Surveillance Control Act, *L*.1968, *c.* 409, the law and public safety committee states that the act involves "the crucial balance between productive law enforcement and individual security." *Law and Public Safety Committee Report, New Jersey Wiretapping and Electronic Surveillance Control Act*, at 35. (September 16, 1974).

Section 17a was amended in 1975 to allow a private citizen who possessed lawfully taped communications containing evidence of a crime to disclose this information to a greater number of people such as local police officers. Thus, the words "or another person" and "of this or another state, any of its political subdivisions, or of the United States" were added. *Id.* at 29. The general purpose of these disclosure provisions is to aid cooperation between interstate investigations and to discourage competition between state and federal law enforcement agencies. *Id.* at 28. The report states, "often, receipt of such information can prevent or minimize the effects of serious or violent crime." *Ibid.*

While on its face it is not clear whether § 17a authorizes disclosure, it is clear that § 18 would not allow disclosure under our facts. Section 18 is limited to information about "offenses other than those specified in the order of authorization." It is conceded by the movant that the tapes in the instant case do not contain evidence relating to any criminal offense. It is also clear that § 17b of the act would not authorize disclosure here, given that this section is limited to criminal proceedings.

Remaining for decision is the question of whether the tapes may be disclosed or used pursuant to § 17a or § 17c. This latter section appears to allow disclosure if good cause is

established before the Superior Court. There are no New Jersey cases defining what constitutes "good cause" for disclosure under § 17c. An alternate reading of § 17c would mean that disclosure is limited to a court of competent jurisdiction, defined in *N.J.S.A.* 2A:156A–2h as the Superior Court—excluding administrative proceedings.

The language of § 17a limits the class of persons to whom information contained in a lawfully intercepted communication may be disclosed, to "investigative or law enforcement officers" which is defined in *N.J.S.A.* 2A:156A–2f as:

Any officer of the State of New Jersey or of a political subdivision thereof who is enpowered by law to conduct investigations of, or to make arrests for, any offense enumerated in § 8 of this act and any attorney authorized by law to prosecute or participate in the prosecution of any such offense.

Section 8 of the state statute lists certain serious offenses, none of which are involved in the present case.

■ The above definition does not allow disclosure to a mayor, a psychiatrist, a borough council, a solicitor, or to any attorney. A police chief technically falls under the definition of a "law enforcement officer." However, the analysis under § 17a then shifts to the phrase "appropriate to the proper performance of his official duties." There is no doubt that disciplining officers is a duty under *N.J.S.A.* 40A:14–147. However, disclosure under this section would appear to be prohibited, given the federal statute upon which the state statute is based. The chief of police here is not a "law enforcement officer", but merely a municipal department head.

### III.

#### *The Federal Wiretap Act.*

A determination of the issue at hand cannot properly be made without reference to the federal wiretap statute, 18 *U.S.C.A.* § 2510 *et seq.* Indeed, § 17a of the New Jersey statute is almost verbatim of the federal act. *See Report on New Jersey Wiretapping and Electronic Surveillance Control Act, supra*

at 28. The preamble to Title III of the Omnibus Crime Control and Safe Streets Act states:

> In order to protect effectively the privacy of wire and oral communications, to protect the integrity of court and administrative proceedings, and to prevent the obstruction of interstate commerce, it is necessary for Congress to define on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized, to prohibit any unauthorized interception of such communications and the use of the contents thereof in evidence in courts and administrative proceedings. [§ 801(b); 114 *Cong.Rec.* 11189 (1968).]

The legislative history of the federal wiretapping statute makes it clear that it was meant to be comprehensive in governing the interception and use of oral and wire communications. The purpose of Title III was to (1) protect the privacy of wire and oral communications, and (2) delineate on a uniform basis the circumstances under which the interception of wire and oral communications may be authorized. *Senate Report No.* 1097, 1968 *U.S.Code Cong. & Ad.News* at pp. 2112, 2153. Title III was passed to combat organized crime. *Id.* at 2157. This is also the stated purpose of the state wiretap act. In balancing the privacy of individuals and law enforcement needs, the federal statute was drafted to comport with the constitutional standards for electronic surveillance laid down by the Supreme Court in *Berger v. New York*, 388 *U.S.* 41, 87 *S.Ct.* 1873, 18 *L.Ed.*2d 1040 (1967) and *Katz v. United States*, 389 *U.S.* 347, 88 *S.Ct.* 507, 19 *L.Ed.*2d 576 (1967). *Id.* at 2156.

The legislative history of paragraph 3 of § 17 of the federal act supports the notion that only disclosure and use in criminal proceedings was intended for information concerning a wire or oral communication or evidence derived therefrom while giving testimony. The 1968 *Senate Report* No. 1097, *supra* envisioned "The use and disclosure of such evidence at trial to establish guilt directly, or to corroborate, or to impeach a witness' testimony or to refresh his recollection." *Id.* at 2188, 2189; citations omitted. The wording of paragraph 3, § 17, in 1968 read as follows:

> (3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived

therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of the United States or any State or in any Federal or State grand jury proceeding.

Crucial to the case at hand is a 1970 amendment to paragraph 3 of § 17, which deleted the word "criminal" before "proceeding" and added "held under authority of the United States or any state or political subdivision thereof." The legislative history of this amendment reveals that the amendment was necessary "to permit evidence obtained through the interception of wire or oral communications under court order to be employed in civil actions." *Pub.L. No.* 91–452, 1970 *U.S.Code Cong. & Ad.News* 4032. The most plausible interpretation is that such an amendment would not be necessary if disclosure for "non-criminal" purposes was already permitted under the then existing federal provisions.

■ Given that the corresponding state wiretap act provision to paragraph 3 of § 17 of the federal wiretap law is *N.J.S.A.* 2A:156A–17b, and this state section retains the limitation to "criminal proceedings," there is good reason to believe that § 17b, as well as any provision of the state act, does not permit disclosure for disciplinary proceedings.

■ As for *N.J.S.A.* 2A:156A–17c, which provides for disclosure upon a showing of "good cause," the federal statute contains what appears to be the substance of this provision in paragraph 5 of § 2517, which reads as follows:

■ When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

.

However, this section provides that when authorized or approved by a judge of a court of competent jurisdiction, the contents may only be used under paragraph (3), the very paragraph that was limited in 1968 to criminal proceedings and amended in 1970 to include civil proceedings. Thus, the New Jersey "good cause" provision of § 17c would be limited to criminal proceedings as provided in *N.J.S.A.* 2A:156A–17b because § 17b. of the state act corresponds to paragraph (3) of § 17 of the federal act and the former has not been amended to include civil proceedings. *See Scott v. United States,* 573 *F.Supp.* 622, n. 9 (D.Tenn.1983).

With § 18, § 17c and § 17b eliminated as possible bases for disclosure under the state wiretap act and under our facts, the only remaining issue is possible disclosure under *N.J.S.A.* 2A:156A–17a to the Penns Grove police chief if he is deemed an "investigative or law enforcement officer." Here, disclosure may only be made if it is "appropriate to the proper performance of his official duties."

State law is silent as to what constitutes "proper performance of official duties" under *N.J.S.A.* 2A:156A–17a, but federal legislative history and case law is not. *Senate Report No.* 1097, *supra,* discusses § 2517(1) and (2) stating that "only disclosure that is appropriate to the proper performance of the official duties of the officers making *and* receiving the disclosure may be made." *Id.* at 2188. The meaning of this phrase "envisions use of intercepted communications, for example, to establish probable cause for arrest, to establish probable cause to search, or to develop witnesses. *Ibid.;* citations omitted. Thus, it appears as though only uses related to criminal proceedings were foreseen under paragraphs 1 and 2 of § 17 of the federal act.

While there is no federal case law interpreting the provisions of § 17 as to disciplinary proceedings, a line of cases deals with disclosure of intercepted communications to other agencies of the federal government for use in non-criminal proceedings.

*American Friends Service Committee v. Webster* 720 *F.*2d 29, (D.C.Cir.1983) held that the National Archives and Record Service record management inspection function did not "fit within the criminal law investigation and enforcement objectives Congress sought to serve in allowing shared access to and use of Title III materials by law enforcement officers." *Id.* at 73. The court reasoned that paragraphs 1 and 2 of § 2517 permitted disclosure and use of intercepted materials to investigative and law enforcement officers in the proper performance of official duties which was limited to "sharing information within the law enforcement community," citing legislative history. *Ibid.*

A closer analogy to our facts involves release of intercepted material to Internal Revenue Service agents for use in civil tax proceedings. Although there is disagreement as to whether IRS Agents are "investigative or law enforcement officers," see *Scott v. United States*, 573 *F.Supp.* 622, (D.Tenn.1983) and *United States v. Iannelli*, 477 *F.*2d 999 (3 Cir.1973) aff'd on other grounds, 420 *U.S.* 770, 95 *S.Ct.* 1284, 43 *L.Ed.*2d 616 (1975), the crucial distinction which prevents disclosure is whether there has been a previous public disclosure, in a criminal proceeding, of the information sought to be disclosed. In *Fleming v. United States*, 547 *F.*2d 872 (5 Cir.1977), the taxpayers were indicted for illegal gambling and pled guilty. Testimony was given in open court concerning the contents of the intercepted telephone conversations. FBI agents then released the information to IRS agents. The court declined to resolve the statutory interpretation issues, but held that, under the circumstances, when intercepted communications are already part of the public record of a criminal prosecution, the privacy interest is weak and does not justify exclusion of evidence. See also *Griffin v. United States*, 588 *F.*2d 521 (5 Cir.1979) (The same court allowed disclosure under § 2517(3) but n. 7 states, with the always-present qualification that this construction of the statute is made only in circumstances where no "subterfuge or significant infringement of privacy interests

has been shown"); *Spatafore v. United States*, 752 *F*.2d 415 (9 Cir.1985) (agreeing with the analysis of the above two fifth circuit cases).

The only reported case which interprets the disclosure issue under § 2517 where the intercepted communication has not been previously publicly disclosed is *Scott v. United States*, 573 *F.Supp.* 622 (D.Tenn.1983). Here, the FBI under a court order, obtained information through a wiretap and used it to obtain search warrants. One of the documents seized contained information which IRS agents wanted after reading newspaper accounts. The FBI allowed the IRS agents to photocopy the documents, but plaintiffs had never been indicted or tried for any of the offenses designated in the wiretap order or search warrants. This case very carefully analyzes the federal disclosure provisions of § 2517. It holds that § 2517(1) limits disclosure to "investigative and law enforcement officers" and defines this term in the context of the listed crimes in § 2516, "none of which concerns a violation of the Internal Revenue Code." *Id.* at 625. The court goes on to state, "to ignore the clear meaning of that limitation renders nugatory both § 2510(7) and § 2517". *Ibid.*

Even if *Scott's* interpretation of the meaning of "investigative or law enforcement officer" is incorrect, accepting *Ianelli, supra,* the analysis of the scope of "use appropriate to the proper performance of [the officer's] official duties" in § 2517(2) is persuasive. "Use" in § 2517(2) is deemed to mean in the officer's own departmental investigation and prosecution. "The provision does not envision disclosure to any government official who happens to knock on the door." *Id.* at 625. Thus, even if the Penns Grove police chief is an "investigative or law enforcement officer," the intended "use" of the tape recordings would not be of the type envisioned by the state or federal wiretap act. In the context of departmental disciplinary proceedings, the police chief here is functioning as the administrative head of a municipal department. As such, he is no differ-

ent than any other department head seeking to discipline an employee. This matter is purely civil.

The *Scott* case makes it clear that any disclosure of wiretape information not previously disclosed to the public for use in proceedings that are not criminal, would not only violate the federal act, but it would also violate the constitutional limits of *Katz* and *Berger, supra,* which Title III was drafted to comport with. The *Scott* court states:

> To interpret Title III as authorizing disclosure under these circumstances would leave the doors open for widespread invasions of privacy in violation of the fourth amendment and against the clear legislative intent of the statute. Thus, the court holds that disclosure by the FBI to the IRS of the contents or fruits of electronic surveillance conducted legally or illegally is in violation of 18 *U.S.C.* 2517. [573 *F.Supp.* at 625]

The court there correctly views the disclosure as an additional invasion of privacy, "with none of the required statutory and constitutional safeguards." *Id.* at 628.

Even if federal law allowed such disclosure under any of the provisions of § 2517, a state may give its citizens greater protection than does federal wiretap law and may construe its own wiretap statute to give additional protection. *State v. Catania,* 85 *N.J.* 418 (1981). The New Jersey wiretap statute must be strictly construed. *See ibid.; In re Wire Communication,* 76 *N.J.* 255 (1978) and *State v. Luciano,* 148 *N.J.Super.* 551 (App.Div.1977).

Given the above and the fact that our state statute was patterned after the federal statute, see *State v. Sanchez,* 149 *N.J.Super.* 381 (Law Div.1977), the motion is denied.

The prosecutor will submit the appropriate order.